George Eilpeeie, J.
(dissenting). I do not agree with the conclusion of my colleagues. The facts briefly stated are these :
The appellants appeal from judgments of conviction entered against them in the Gamblers ’ Court convicting them after trial of violating section 986 of the Penal Law. The police officer testified that he arrested defendants on March 1 and that prior thereto, to wit, on February 26, 1962, he made three phone calls and that on March 1 he made several other calls. As a result of the foregoing telephone calls he obtained a search warrant for the premises in question. He ascertained that one of the phone numbers was listed in the name of the defendant Gallart and the other phone number in the name of one John La Salle, *943 both of the same address. Pursuant to the warrant he went to said premises, rang the bell and was admitted by the defendant Gallart. He showed Gallart a copy of the search warrant, whereupon he responded “ O. K. you got us.” He inquired of Gallart where Moe was since Moe was the individual with whom he had had the respective phone calls, as the testimony discloses. He was advised by Gallart that Moe was upstairs. He saw Moe seated at the table with the telephone instrument in his hand and to his ear. Moe Smoke was making notations on a sheet of paper; the officer identified himself to Smoke, showed the search warrant and seized the sheet of paper which was in front of him. The testimony discloses there were notations on the sheet of paper and in the opinion of the police officer these notations were the names of race tracks located in the United States and that some of the numerals written thereon corresponded to the numerals that were given to him when he made the call to the exchange to which Moe responded. The officer had a conversation with the defendant Smoke, after which he placed Moe under arrest. The conversation was as follows:
Q What did you say to him and what did he say to you? A I told defendant Smoke I know he was giving out the results to the bookmakers and defendant Smoke said, “yes, I give the results to bookmakers.” I said, “you are getting calls from all over the country?” He said, “no, I don’t get calls from all over the states, I get them from one main guy in Manhattan.” I asked him how many bookmakers or persons did he service with these results. He said, “ I got about twenty accounts.” I says, “ are you the boss? ” He said, “no.” I said, “you must be a clerk.” He said, “yes, I get about $100 a week to work the phones. My boss gets the money for the service from the accounts to call here.” I asked him if it was a weekly or daily charge and defendant Smoke said, “it’s a weekly charge.” Then I asked him about People’s Exhibit I, which is entered in evidence. I asked him if that was his handwriting on there. Defendant Smoke said, “ yes, that’s my writing,” and he continued, he said, “ that’s the results from all the tracks in the U. S. and the prices paid.” I asked the defendant his name and he said, “ my name is Morris but everybody calls me Moe.” I asked him how much he pays to use the phones and the premises to the defendant Gallart and defendant Smoke said, “ I pay him,” indicating Gallart.
The officer further testified that he identified the defendant Smoke’s voice as that of Moe with whom he had had prior telephone calls before the issuance of the search warrant. The defendants did not take the stand. The contention of the defendants, as well as of my colleagues, is that the transmission or dissemination of racing results to book-makers with knowledge of the fact that it may be used by them does not constitute the crime of aiding or abetting persons engaged in book-making activities in violation of section 986 of the Penal Law. I am of the opinion that this contention is without merit. It is my *944 opinion that defendant G-allart would be violating section 986 of the Penal Law if he aided or abetted in any of the activities referred to in that section. The only New York ease on the subject is People v. Pollack (204 Misc. 64). In that case it appeared that defendant Pollack from a position inside a race track signaled information to a codefendant stationed in a house outside the race track. When the information was received it was telephoned to the Delaware Wire Music Co. and transmitted over its leased wires. The Delaware Company appeared in the proceeding and claimed its business was the distribution and dissemination of music and all types of sporting news. The court stated the problem at page 66 as follows: “ Thus the question narrows itself down to whether the transmission of such racing information, with implied knowledge of the fact that upon occasions it may or will be used by bookmakers in the furtherance of their illegal enterprises, makes the defendants transmitting such information * * * and those aiding and abetting them therein * * * guilty of any or all of the crimes ultimately committed by such book-makers, policy players, etc.” The court answered the question by finding that the defendants’ activities did not constitute a crime.
Assuming for the purpose of this discussion that the Pollack case is the law of the State, the appellants overlook the fact that the recipient of the information in the Pollack case was the Delaware Wire Music Company, which was engaged in the distribution of music over leased wires and the dissemination of news, including all types of sporting news. (See People v. Pollack, supra, p. 66.) In the case at issue there was an absolute unequivocal admission by the defendant Smoke, “ yes, I give the results to bookmakers ” and in response to the officer’s questions as to how many book-makers or persons he serviced with these results, he said “ about twenty accounts.” This certainly places Smoke as well as Gallart, who permitted the premises to be used for improper purposes, in the category of aiding and abetting any of the foregoing activities specified in section 986 of the Penal Law. It would negate the very intention of the Legislature and society that one who is in the employ of book-makers should be placed in the same category as periodicals, radio and television which disseminate the results of sporting events.
Accordingly I vote to affirm the judgments of conviction.
Di Giovanna, J., concurs with Pette, J.; Eilpeexn, J., dissents and votes to affirm in opinion.
Judgments of conviction reversed on the law and facts, and complaints dismissed.